**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GABRIELA DA SILVA LOPES,<br><br>Petitioner,<br>v.<br><br>PATRICIA H. HYDE, et al.,<br><br>Respondents. | Civil Action No. 25-cv-14017-LTS |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR AN AWARD OF ATTORNEY'S FEES**

Respondents respectfully oppose Gabriela Da Silva Lopes' ("Petitioner") Motion for Attorneys' Fees and Expenses Under the Equal Access to Justice Act ("EAJA"). *See* Doc. No. 14. The Court should not award fees and costs because 1) habeas petitions are not "civil actions"—a threshold requirement for recovery under the EAJA; and 2) Respondents were "substantially justified" in taking the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.*; *see Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *1-5 (5th Cir. Feb. 6, 2026) (holding that "applicants for admission," which include all noncitizens who have not previously been admitted to the United States, are necessarily "seeking admission" and therefore subject to mandatory detention under § 1225(b)(2)(A)).

## I. BACKGROUND

### A. The Petition

Petitioner alleged she was a citizen of Brazil who entered the United States in July 2021 as a sixteen-year-old minor. Doc. 1, ¶ 1. Petitioner later married and her U.S. citizen spouse filed an I-130, Petition for Alien Relative, that is currently pending at USCIS. Doc. 1, ¶¶ 23, 25. Additionally, Petitioner filed an I-589, Application for Asylum, Withholding of Removal, and

Convention Against Torture. Doc. 1, ¶ 26. On December 30, 2025, Petitioner was taken into ICE custody. Doc. 1, ¶ 27. Petitioner asserted two counts in her Petition: 1) a substantive due process claim under the Due Process Clause of the United States Constitution; and 2) a procedural due process claim under the Due Process Clause of the United States Constitution. Doc. 1, p. 14. For relief, among other things, Petitioner sought immediate release or a bond hearing. Doc. 1, p. 15.

**B. Response to Petition**

In response to the Petition, Respondents conceded that "the legal issues presented in this Petition are similar to those recently addressed by this Court in *Garcia v. Hyde*, Civil Action No. 25-cv-11513-LTS (D. Mass. July 14, 2025), and *Encarnacion v. Moniz*, Civil Action No. 25-cv-12237-LTS (D. Mass. Sept. 5, 2025). Should the Court follow its reasoning in *Garcia* and *Encarnacion*, it would reach the same result here. Accordingly, Respondents submit that the Court may resolve this Petition without further briefing or oral argument." *Id.*

**C. The Court's Order**

The Court ordered the immediate release of Petitioner without prejudice to a bond hearing held within seven days. Doc. 9. The Court noted that it "render[ed] [its] decision in light of the record before the Court, the prior decisions of the Court, the government's concession that this case is similar to prior cases resolved by this Court and the absence of an appropriate facility to detain women in Massachusetts." *Id.* The Court further ordered Respondents to file a status report, no later than January 16, 2026, reporting the status of any further bond proceedings.[1]

---

[1] In accordance with the Court's Order, on January 9, 2026, Respondents filed a status report indicating that Petitioner had been released in accordance with the Court's Order, that a bond hearing was scheduled for January 8, 2026 (for which Petitioner did not appear), and that the bond hearing was rescheduled to January 12, 2026. *See* Doc. 11. In response, the Court ordered a further status report within three days of the rescheduled bond hearing. *See* Doc. 12. On January 15, 2026, Respondents filed a status report indicating that the bond hearing took place as scheduled

## II. LEGAL STANDARD

"As a general principle, each party before the court is usually responsible for its own attorney's fees." *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023). "The EAJA is an exception to this traditional 'American rule.'" *Id*. EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). "The statute's purpose is 'to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" *Michel*, 68 F.4th at 78 (quoting *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009)). "Not only is the EAJA a fee shifting statute, but it is also a waiver of the government's sovereign immunity 'and so must be construed strictly in favor of the government.'" *Id*. (quoting *Aronov*, 562 F.3d at 88).

## III. ARGUMENT

### A. EAJA Does Not Waive Sovereign Immunity For Habeas Cases Challenging Immigration Detention.

The district court's jurisdiction to grant a fee award would only exist if Congress had waived sovereign immunity for EAJA awards stemming from such habeas actions. Sovereign immunity generally bars all awards of monetary relief against the United States, its agencies, and its employees sued in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). And only Congress can waive the United States' sovereign immunity. *Lane v. Peña*, 518 U.S. 187, 192

---

on January 12, 2026, and that Petitioner was granted release under bond in the amount of $5,000. *See* Doc. 13.

(1996).

To respect Congress's prerogative to waive sovereign immunity (or not), the Supreme Court has imposed a stringent standard for finding waivers. It has thus stated "on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane*, 518 U.S. at 192). This amounts to a "clear statement" rule: "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 49 (2024) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000)).

Whether Congress has waived immunity "turns on statutory text rather than legislative history." *Id.*; *see also Cooper*, 566 U.S. at 290 ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute."). Thus, because the dispositive question on whether sovereign immunity has been waived revolves around the precise words used by Congress, "a court charged with asking whether Congress has spoken clearly has its answer long before it might have reason to consult the Congressional Record." *Kirtz*, 601 U.S. at 49.

And even where, as in EAJA, Congress has enacted a waiver of immunity, the scope of that waiver "must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (cleaned up). Based on this principle, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *Cooper*, 566 U.S. at 290. In the sovereign immunity context, "[a]mbiguity exists if there is a plausible interpretation of the statute that would not allow money damages against the Government." *Id.* at 290-91.

Here, EAJA waives sovereign immunity only for a limited set of claims, in that it applies only to "any civil action (other than cases sounding in tort)." And the term "civil action" is

ambiguous as to whether it encompasses habeas petitions. The Supreme Court has recognized that, even though habeas petitions are often categorized as civil for general purposes, "the label is gross and inexact." *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969). Habeas proceedings are instead "unique." *Id.* at 294. Indeed, the problems presented in habeas proceedings "are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure." *Id*. at 300 n.7.

Accordingly, the Supreme Court has repeatedly refused to construe the statutory phrase "civil action" as invariably encompassing habeas proceedings. *See Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) ("Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions."); *Stafford v. Briggs*, 444 U.S. 527, 54243 (1980) (recognizing that *Schlanger* rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings).

Congress enacted EAJA 21 years after *Harris* and nine years after *Schlanger*. In passing the EAJA, Congress adopted statutory language that used the same phrase—"civil action"—the Court had already held did *not* encompass habeas petitions. *See* Pub. L. 96-481 § 204(a), 94 Stat. 2321, 2328 (1980). Given that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), Congress presumptively intended to adopt *Schlanger*'s construction of that term as excluding habeas petitions.[2]

[2] To be sure, in its jurisprudence addressing which Federal Rules of Civil Procedure apply—and which do not—to habeas proceedings, the Supreme Court has occasionally referred to such proceedings as civil. *See, e.g.*, *Banister v. Davis*, 590 U.S. 504, 507 (2020); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 (1978). But none of those cases addressed the question here: whether the statutory phrase "civil action" in EAJA *unambiguously* encompasses habeas petitions.

Although the First Circuit Court of Appeals has not resolved whether EAJA applies to habeas petitions, other circuit courts have held that it does not. In *Obando-Seguro v. Garland*, the Fourth Circuit held that EAJA does not apply to "habeas proceedings seeking release from civil detention." 999 F.3d 190, 191 (4th Cir. 2021).

The Fifth Circuit has reached the same result, expressly agreeing with the Fourth Circuit. *See Barco*, 65 F.4th 782, 785 (5th Cir. 2023). The Fifth Circuit explained that "[s]ince 'a habeas corpus proceeding is neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique, a category unto itself,' it is not purely a civil action, and the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Id.* (quoting *O'Brien v. Moore*, 395 F.3d 499, 505, 508 (4th Cir. 2005)).

The Second, Tenth, and recently the Third Circuits, on the other hand, distinguish between immigration and criminal habeas cases and consider immigration habeas cases to be "civil actions" for EAJA purposes. *See Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005); *Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (following *Daley* and waiving sovereign immunity to fee awards for habeas challenges to immigration detention). The *Vacchio* court based this distinction on what it deemed to be the legislative purpose of the EAJA—to eliminate financial barriers to challenging unreasonable government action. *Id.* at 669-71. The court reasoned that, while the goal of eliminating financial barriers is not served in criminal habeas proceedings because criminal defendants are sometimes provided court-appointed counsel, the goal is served in immigration habeas proceedings because "persons in immigration proceedings are not provided free legal representation in the absence of paid counsel." *Id.* at 670-71. The Fourth Circuit in *Obando-Segura* rejected the Second Circuit's approach, "declin[ing] to delve into the legislative-

purpose morass," and instead focused on "why habeas proceedings are hybrid proceedings that are meaningfully different from civil actions." 999 F.3d at 195. The court added that "habeas proceedings do not change their nature based on the rationale for the underlying detention: there is just a single 'type' of habeas proceeding." *Id.*

The numerous circuits that have concluded habeas proceedings are not "civil actions" for EAJA purposes and the split between the Fourth and Fifth and the Second, Third, and Tenth Circuits on whether immigration habeas cases are "civil actions" illustrate that Congress did not unequivocally express its intent for the term "civil actions" to include criminal or immigration habeas proceedings. Because of this ambiguity, the rule that waivers of sovereign immunity are to be strictly construed requires the Court to follow the Fourth and Fifth Circuits' approach and construe the ambiguity in Respondents' favor. Accordingly, Petitioner's habeas case was not a "civil action", and Petitioner is not eligible for attorney's fees under the EAJA.

**B. Respondents Were "Substantially Justified" In Asserting That Petitioner Is Subject To Mandatory Detention Under 8 U.S.C. § 1225(b)(2)(A).**

In any event, Respondents were substantially justified in detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A), as evidenced most recently by the Fifth Circuit ruling in the government's favor on the issue. *See Buenrostro-Mendez*, 2026 WL 323330, at *1-5.

The First Circuit has "held that the government is 'substantially justified' if 'it has a reasonable basis in law and fact' for its position[.]" *Michel*, 68 F.4th at 78 (quoting *Aronov*, 562 F.3d at 94). In other words, the government is "substantially justified" if "a reasonable person could think [the government's position] correct[.]" *Id*. (quoting *Dantran, Inc. v. U.S. Dep't of Lab.*, 246 F.3d 36, 41 (1st Cir. 2001)). "To be 'substantially justified,' it is not necessary for the [g]overnment's position to be 'justified to a high degree'; rather, the [g]overnment meets this standard if its position is 'justified in substance or in the main.'" *Id*. (quoting *Saysana v. Gillen*,

614 F.3d 1, 5 (1st Cir. 2010)). "Further, even if the government failed on the merits, its position could still have been substantially justified." *Id*. "Finally, 'in evaluating the [g]overnment's position, [the Court] must arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action.'" *Id*. (quoting *Samsaya*, 614 F.3d at 5).

In the immigration context, the government must establish substantial justification twice—"once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action." *Id.* Here, Respondents were substantially justified in both the underlying agency action—ICE detaining Petitioner without a bond hearing—and in their litigation position opposing Petitioner's habeas petition based on the Civil Division's obligation to defend the constitutionality of an Act of Congress.

Respondents maintain that they were substantially justified in detaining Petitioner without a bond hearing because Petitioner was never *lawfully* admitted into the United States. Respondents submit that applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to arriving aliens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). These noncitizens are generally subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i). But if the individual "indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer the alien for a credible fear interview. *Id.* § 1225(b)(1)(A)(ii). An individual "with a credible fear of persecution" is "detained for further consideration of the application for asylum." *Id*. § 1225(b)(1)(B)(ii).

Relevant here, Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)."

*Id.* Under § 1225(b)(2), an individual "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 ("The third category of applicants for admission . . . are those aliens who are seeking admission and who an immigration officer has determined are 'not clearly and beyond a doubt entitled to be admitted.' . . . [T]he INA requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their immigration proceedings."); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299); *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2009) (holding a noncitizen who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond).[3]

The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)). Once in removal proceedings, an Immigration Judge "shall conduct proceedings for deciding the inadmissibility or deportability of

---

[3] Pursuant to regulation concerning the "scope of examination" for an applicant for admission, an "alien present in the United States who has not been admitted or paroled … is subject to the provisions of section 212(a) of the Act [8 U.S.C. § 1182] and to removal under section 235(b) [8 U.S.C. § 1225(b)] or 240 of the Act [8 U.S.C. § 1229a]." 8 C.F.R. § 235.1(f)(2).

an alien." 8 U.S.C. § 1229a(a)(1). Such proceedings are the "sole and exclusive procedure for determining whether an alien may be admitted to the United States…". *Id.,* § 1229a(a)(3). The Department of Homeland Security ("DHS") has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

Here, Respondents submit they were statutorily authorized to detain Petitioner under Section 1225(b)(2). While Petitioner had been residing in the United States for several years before her detention in December 2025, she was nonetheless still an "applicant for admission" because she was present in the United States had never been lawfully admitted.[4] This statutory interpretation was recently upheld by the Fifth Circuit. *See Buenrostro-Mendez*, 2026 WL 323330, at *4 ("The everyday meaning of the statute's terms confirms that being an "applicant for admission" is not a condition independent from "seeking admission"). As an applicant for admission, she was subject to mandatory detention under Section 1225(b).

As can be gleaned from the legal precedent referenced above, the issue of whether a noncitizen detained under 1225(b) is entitled to a bond hearing under 8 U.S.C. § 1226 is debated. That being the case, "[W]hile the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). At minimum, the government is justified in litigating an issue in which some courts have adopted

[4] The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

its position, even if it is a minority position. Accordingly, ICE's decision to detain Petitioner without a bond hearing was substantially justified and Petitioner is thus not eligible for fees under the EAJA.

## IV. CONCLUSION

For these reasons, Petitioner's request for fees under EAJA should be denied.

Dated: February 13, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: *<u>/s/ Nicole M. O'Connor</u>*

Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3112
Nicole.O'Connor@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on February 13, 2026.

*<u>/s/ Nicole M. O'Connor</u>*
Nicole M. O'Connor
Assistant U.S. Attorney